UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEW HORIZON HOME CARE, LLC and GUIDING LIGHT HOSPICE, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> NORTHEASTERN NEVADA REGIONAL HOSPITAL, et al., <br><br> Defendants. | Case No. 3:19-CV-00521-RCJ-WGC <br><br> **ORDER** |

Defendants move to dismiss, alleging failure to state a claim and other defenses. Additionally, Defendant Northeastern Nevada Regional Hospital ("NNRH") moves to strike portions of the complaint. Finally, Plaintiffs move for leave to file an amended complaint. First, the Court finds that leave to amend would be futile, and therefore denies Plaintiffs' motion. Proceeding to the motions to dismiss, the Court finds the complaint facially insufficient and consequently dismisses it with leave to amend. Because the Court dismisses the complaint, it denies the motion to strike as moot.

**FACTUAL BACKGROUND**

The allegations in the complaint are as follows: Plaintiffs provide home health care and hospice service in and around Elko, Nevada. Defendants include a hospital, other home health care

and hospice service providers, and individuals. Defendant NNRH is the dominant hospital in Elko and has used this market dominance to "steer" patients to the hospice Defendants, which are direct competitors of Plaintiffs. This steering is accomplished through referrals of discharged patients and providing only the contact information for hospice Defendants in publications. Defendant NNRH refuses to refer patients to Plaintiffs or to put Plaintiffs' contact information in the community publications despite repeated request and complaints. Such steering conduct renders Plaintiffs unable to compete in the hospice market for Elko.[1] Presently, Plaintiffs bring this suit against Defendants, claiming antitrust injuries and unjust enrichment.

## LEGAL STANDARD

Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but demands more than . . . 'labels and conclusions' or 'formulaic recitations of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility is satisfied where the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility does not require a demonstration of probability, but "asks for more than a sheer possibility." *Id.*

Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Consequently, while the Court "accept[s] all

---

[1] Plaintiffs' complaint includes a significant number of paragraphs discussing incidents of patient care, alleged violations of Medicare and Nevada licensing statutes, and multiple other allegations that are not relevant to either antitrust or unjust enrichment claims. Due to this lack of relevance, the Court declines to include those allegations in its recitation of the facts.

material allegations in the complaint as true and construe[d] . . . in the light most favorable to" the nonmoving party, *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986), it is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Nor is it required to accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## ANALYSIS

Prior to engaging in the analysis of the merits, the Court notes that an issue of subject-matter jurisdiction must be addressed, despite there being no objection by Defendants. *See Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 152 (1908) (noting that it is the duty of a federal court to ensure that its jurisdiction granted by statute is not exceeded). Plaintiffs argue that this Court has subject-matter jurisdiction under both 28 U.S.C. § 1331 and § 1332 (among other statutes not at issue here). The issue here is with the claim of jurisdiction under 28 U.S.C. § 1332.

First, Plaintiffs claim jurisdiction under § 1332(d), which is restricted to class actions. Plaintiffs' complaint does not identify this suit as a class action, nor does it identify a proposed class of plaintiffs. However, even if the "(d)" is in error, the requirements for diversity jurisdiction under § 1332, generally, are not met. Plaintiffs allege that "diversity exists, and the amount in controversy exceeds $10 million," (ECF No. 1 at ¶ 25), but review of the named parties show only corporations with their principal place of business in Nevada or individuals domiciled in Nevada. (*Id.* at ¶¶ 13–23.)[2] Therefore, any jurisdiction of this Court may only arise from the presence of a federal question.

///

---

[2] Even if the Court were to consider the parties alleged in the proposed amended complaint, the analysis would not change. (ECF No. 108 Ex. 1 at ¶¶ 1–15.)

### I. *Motion for Leave to File an Amended Complaint (ECF No. 108)*

Plaintiffs move for leave to file an amended complaint under Fed. R. Civ. P. 15(a)(2). (ECF No. 108.) As granting Plaintiffs' motion would void the original complaint, and all of Defendants' motions associated with it, the Court must address Plaintiffs' motion prior to ruling on the other motions. Plaintiffs note the original complaint was prepared by the parties *in propria persona*, and the purpose of the amended complaint is to "clarify their claims and allegations." (*Id.*) Plaintiffs further note that "[t]here has been no undue delay, no bad faith, and no dilatory motive on the part of [Plaintiffs.]" (*Id.*) Defendants oppose the motion, claiming that amendment would be futile. (ECF Nos. 110 and 111.) The Court agrees, and therefore denies the motion.

"A motion for leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 766 (9th Cir. 1986)). In considering futility, the Court applies an analysis identical to that used for Rule 12(b)(6) motions. *Miller*, 845 F.2d at 214.

As discussed in greater detail below, Plaintiffs' antitrust claims are deficient in multiple aspects. Of those deficiencies, the only one Plaintiffs attempt to correct is the lack of interstate commerce or substantial effect on interstate commerce. However, the mere addition of the fact that Defendant NNRH treats patients from Oregon and Utah, (*see, e.g.*, ECF No. 108 Ex. 1 at ¶ 33), does not in any way address the question of whether the *hospice care* is itself participating in or substantially affecting interstate commerce. Thus, even under the amended complaint, Plaintiffs' federal antitrust claims fail as a matter of law.

Plaintiffs' amended complaint correctly identifies the Nevada statutes regarding antitrust actions and also brings two additional state-law claims that were not in the original complaint: business disparagement and intentional interference with prospective economic advantage and/or contractual relationship. However, as discussed above, Plaintiffs have not alleged the presence of

any diverse parties, therefore this Court has no diversity jurisdiction under 28 U.S.C. § 1332. As the Court finds the federal antitrust claims facially insufficient, there are no remaining federal claims that would allow for supplemental jurisdiction under 28 U.S.C. § 1367. Accordingly, there are no claims in the amended complaint over which this Court has jurisdiction and amendment would therefore be futile. Consequently, the Court denies the motion for leave to file amended complaint and proceeds to the motions to dismiss filed in connection with the original complaint.

## II.     *Motions to Dismiss (ECF Nos. 28, 46, 60, 85, and 103)*

Plaintiffs' claims can be organized into three categories: federal antitrust claims under the Sherman Act, state antitrust claims, and a state claim for unjust enrichment. The Court addresses each of these categories in turn and, finding the complaint facially insufficient, dismisses the complaint with leave to amend.[3]

### a. Federal Antitrust Claims Generally

To bring a claim under the Sherman Act, a plaintiff must demonstrate that the allegedly unlawful conduct either occurred in interstate commerce, *Yellow Cab Co. of Nev. v. Cab Emp'rs, Auto. and Warehousemen, Local No. 881*, 457 F.2d 1032, 1034 (9th Cir. 1972), or had a substantial effect on interstate commerce, *id.* at 1035 n.2. In the instant case, Plaintiffs allege the Sherman Act applies because "Defendants employed various [interstate] devices to commit illegal acts described herein," and that "Defendants' complained-of activities occurred within the stream of, and have substantially affected, state and interstate commerce." (ECF No. 1 at ¶ 27.)[4]

---

[3] Because the Court dismisses Plaintiffs' complaint in its entirety for failure to state a claim, Defendant NNRH's motion to strike (ECF No. 45) and Defendant Highland Manor's Rule 12(b)(4–5) arguments are moot. Thus, the Court denies them without prejudice.

[4] These vague assertions evince another deficiency that pervades the complaint in that it does not allege facts sufficient to show how this claim applies to *every* Defendant. Plaintiffs attempt to assert all of the causes of action against all Defendants, but, for example, there is no allegation mentioning Defendant Iguban anywhere in the complaint except in the caption and in Paragraph 20, which only states that he resides and does business in Elko, Nevada.

However, Plaintiffs do not provide any factual allegations to support those legal conclusions. In fact, Plaintiffs have explicitly described the relevant market as "a market for hospice care which benefits patients that comprise the geographic region of Nevada and specifically the region surrounding Elko, Nevada (or smaller geographic markets therein)." (*Id.* at ¶ 234.) Plaintiffs' description of the results of that conduct further undercuts their argument that the allegedly unlawful conduct substantially affects interstate commerce. (*See, e.g.*, ECF No. 1 at ¶ 8 ("This scheme lets Defendants pocket or re-capture a substantial percentage of the home health care and hospice care business in Elko, Nevada.").) Thus, there is not, and cannot be, a dispute over whether Defendants' conduct substantially affected interstate commerce because Plaintiffs have provided only "formulaic recitations of a cause of action," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570), insufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Nevertheless, Plaintiffs argue that the Court should allow discovery and litigate "the issue of jurisdiction . . . once discovery and the facts ha[ve] been solidified by depositions and other discovery." (ECF No. 80 at 26; *see also* ECF No. 100 at 2 ("In fact, every case the Defendants cite had extensive discovery conducted before the courts entertained the question of whether the Plaintiffs have met their burden of proof on the jurisdictional question of interstate commerce.").) Yet, the high cost of discovery, especially in antitrust cases, was the genesis for the *Twombly* ruling. 550 U.S. at 558 ("[I]t is one thing to be cautious before dismissing an antitrust complaint in advance of discovery, but quite another to forget that proceeding to antitrust discovery can be expensive.") (internal citation omitted). Consequently, "it is only by taking care to require allegations that reach the level suggesting [valid antitrust claims] that we can hope to avoid the potentially enormous expense of discovery." *Id.* at 559.

To support the argument that their complaint is sufficient to withstand a motion to dismiss, Plaintiffs point to *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991), which stated that "'liability may be established by proof of either an unlawful purpose or an anticompetitive effect' . . . . Thus, respondent need not allege, or prove, an actual effect on interstate commerce to support federal jurisdiction." *Id.* at 330–331 (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 243 (1980)). Plaintiffs misplace reliance on *Pinhas*, however, as it was "undisputed" that the defendant in *Pinhas* "unquestionably engaged in interstate commerce." 500 U.S. at 329. Further, the market in *Pinhas* was the "provision of [specific in-hospital] services . . . [which] are regularly performed for out-of-state patients and generate revenues from out-of-state sources" and are important to "the entire operation of the hospital." *Id.* at 329–330. In the instant case, as discussed above, the relevant market is in-home hospice care, and the complaint lacks allegations that Defendants (or Plaintiffs, for that matter) provide such services in interstate commerce. Therefore, *Pinhas* is inapposite.

Furthermore, the failure to demonstrate interstate commerce, or substantial effect on the same, is not the only legal defect in Plaintiffs' complaint. As has been repeatedly noted, "[t]he antitrust laws . . . were enacted for 'the protection of *competition* not competitors.'" *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977) (emphasis added) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). Explicitly excluded from that category are "claim[s] to profits that would have been earned" in the absence of the alleged anti-competitive conduct. *Brunswick Corp.*, 429 U.S. at 490.

Yet, these are precisely the allegations made by Plaintiffs. (*See, e.g.*, ECF No. 1 at ¶ 34 ("Steering—*and the competition from lower-priced healthcare providers that steering animates*— threatens Plaintiff's [sic] revenues.") (emphasis added).) In fact, the conduct described by Plaintiffs seem to *benefit* consumers, not harm them. (*See, e.g., id.* at ¶ 33 ("The ability of NNRH

to steer gave [Defendants] a decided market advantage as those organizations did not have to advertise or otherwise seek new patients, *which in turn reduced their costs* and provided a market edge to them that was not provided to the Plaintiffs.") (emphasis added); *id.* at ¶ 35 ("NNRH steered patients to Defendants . . . and away from Plaintiff's [sic] *to the detriment and loss of the Plaintiffs*.") (emphasis added); ECF No. 113 at 4:20–22 ("Plaintiffs have been harmed by this [conduct] because they have lost patients based upon this activity, and the Plaintiffs have decreased revenue as a result of the activity in question").) Thus, Plaintiffs only allege Defendants' actions harmed *them*—not *competition*—contravening well-settled antitrust law.

In sum, Plaintiffs have not alleged facts sufficient to show that any Defendant's actions were in or substantially affected interstate commerce, or that they harmed competition. Therefore, Plaintiffs' federal antitrust claims are facially invalid, and the Court dismisses them accordingly.

    *b. Federal Antitrust Claims in Regard to Defendant NNRH*

In addition to the general objections brought by various Defendants, Defendant NNRH makes several objections that apply solely to the claims against it. Defendant argues that, aside from the other deficiencies in Plaintiffs' antitrust claims, Plaintiffs fail to allege a conspiracy, as required under Section 1, and that Defendant is a market participant, as required under Section 2. Both arguments are correct.

It is well-settled law that "[t]he conduct of a single [entity] is governed by § 2 alone and is unlawful only when it threatens actual monopolization." *Copperweld Corp. v Independence Tube Corp.*, 467 U.S. 752, 767 (1984). That is, Section 1 requires "a 'contract, combination . . . or conspiracy' between *separate* entities. It does not reach conduct that is 'wholly unilateral.'" *Id.* at 768 (emphasis in original) (first quoting 15 U.S.C. § 1, then quoting *Albrecht v. Herald Co.*, 390 U.S. 145, 149 (1968)). The sole allegations in the complaint that there is any sort of agreement or conspiracy are the grammatically incorrect phrase "Between NNRH steering patients to

Defendants . . . because of the increased patient volume that accompanies steering, as well as alleged kickbacks from Defendants," (ECF No. 1 at ¶ 36), and the phrase "Defendants continue to improperly steer patients away from Plaintiffs and into their own pockets," (*id.* at ¶ 73). The inclusion of the words "alleged kickbacks" and vague allegations are not sufficient to find a properly alleged conspiracy in light of the multiple allegations that appear to demonstrate that Defendant NNRH's conduct is unilateral in nature. (*See, e.g.*, ECF No. 1 at ¶¶ 1–5, 35.)

As to Plaintiffs' Section 2 claims, "[t]he requirement that the alleged injury be related to anti-competitive behavior requires, as a corollary, that the injured party be a participant in the same market as the alleged malefactors." *Bhan v. NME Hospitals, Inc.*, 772 F.2d 1467, 1470 (9th Cir. 1985). Plaintiffs identify the relevant market as "the market for hospice care which benefits patients." (ECF No. 1 at ¶ 234.) As a hospital, Defendant NNRH is not involved in the market for hospice care other than the fact that patients discharged from the hospital sometimes engage hospice care providers. That is simply not enough to label Defendant NNRH as a "market participant."

    c.  *State Antitrust Claims*

Four of Plaintiffs' nine counts claim antitrust abuses in violation of "Nevada common law." However, antitrust actions are governed by Nevada statute, not common law. *See* NRS 598A.010, *et seq*. Specifically, private antitrust actions are governed by NRS 598A.210. Therefore, Plaintiffs' state antitrust claims are facially invalid, and the Court dismisses them accordingly. Furthermore, as discussed above, correctly identifying the statutes which provide a cause of action does not remedy the jurisdictional issue created by the lack of diversity or the lack of standing provided by the federal antitrust statutes.

///

///

*d. Unjust Enrichment*

Under Nevada law, "[u]njust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot. V. Precision Constr.*, 283 P.3d 250, 257 (Nev. 2012) (quoting *Unionamerica Mtg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)). Here, Plaintiffs allege that "Defendants have knowingly received and retained wrongful benefits in multiple forms," (ECF No. 1 at ¶ 294), but do not provide any factual description of benefits "conferred by" Plaintiffs. Instead, the "benefits" Plaintiffs appear to allege are unlawfully withheld are the "financial benefits" that Plaintiffs would have derived from referrals if not for the unlawful conduct. (*Id.* at ¶ 298.) Such financial benefits are not those envisioned by the doctrine of unjust enrichment. Accordingly, the Court dismisses Plaintiffs' claim of unjust enrichment.

*e. Leave to Amend*

Upon granting a motion to dismiss, a court must then determine whether to allow leave to amend the complaint. Leave to amend should be granted unless "amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990)). That is, dismissal without leave to amend is appropriate only where "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citing *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th

///

///

///

///

Cir. 1962)). Here, the Court cannot find that amendment would be futile, therefore dismisses Plaintiffs' complaint with leave to amend.[5]

## CONCLUSION

IT IS HEREBY ORDERED that Defendants' Motions to Dismiss (ECF Nos. 28, 46, 60, 85, and 103) are GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Complaint (ECF No. 1) is DISMISSED WITH LEAVE TO AMEND.

IT IS FURTHER ORDERED that Plaintiffs have thirty days from the date of this Order to file an amended complaint. If Plaintiffs decline to file an amended complaint, the Clerk shall enter judgment and close the case.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File an Amended Complaint (ECF No. 108) is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Strike (ECF No. 45) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated May 20, 2020.

_____
ROBERT C. JONES
United States District Judge

---

[5] In the event Plaintiffs choose to file an amended complaint, the Court refers counsel to LR IA 10-1, LR 7-2, and LR 7-3 for use in their litigation before this Court. Furthermore, the Court notes that the practice of simply copying and pasting paragraphs from a complaint into a responsive filing does not actually constitute argument or rebuttal of the relevant motion. *See, e.g.*, *Aubrecht v. Penn. State Police*, 389 Fed. App'x 189, 192–93 (3d Cir. 2010). Indeed, such a "copy-and-paste approach to briefing . . . 'is inexcusable for a counseled complaint.'" *Dama v. Prudential Ins. Co. of Am.*, No. 18-CV-03104, 2018 WL 6706314, at *2 n.3 (E.D.N.Y. Dec. 20, 2018) (quoting *Lowe v. Planning & Zoning Comm'n of Town of Mansfield*, No. 3:16-CV-381, 2018 WL 379010, at *4 n.3 (D. Conn. Jan. 10, 2018)).